on to the second case of the day, which is appeal number 22-2800, United States v. Shamond Jenkins. Good morning. Good morning. My name is Sarah Butler and I'm here on behalf of Mr. Shamond Jenkins. The issue in this case is whether Mr. Jenkins' constitutional rights under the Fifth and Sixth Amendment were violated by a requirement that he wear a mask during the eyewitness identification testimony during trial. A mask that was identical to the mask worn by the person who surgical mask that so many of us were wearing through the COVID? That's correct. Okay, thanks. The violation of Mr. Jenkins' Sixth Amendment constitutional right to confrontation constitutes both a structural error and plain error. The violation of Mr. Jenkins' Fifth Amendment constitutional right to due process constitutes plain error. Ms. Butler, even though Mr. Jenkins was the bank witnesses, how was he not able to confront them within the meaning of the confrontation clause? I mean, I take your point that the witnesses could not see Mr. Jenkins' facial expressions and reactions to their testimony, given that he was bearing, you know, wearing a mask. But is any error in this respect truly obvious for purposes of plain error review, which of course we're under here, given the public health need for masking and the fact that purposes of the confrontation clause were otherwise served and that virtually everyone in that courtroom was wearing a mask? Yes, I think there's an issue under Coy versus Iowa as well as Maryland versus Craig. While there is a public health crisis at the time and there was a necessary reason for COVID procedures to be implemented, the testifying witnesses were allowed to remove their masks through the duration of their testimony. And I think in the guidance that's provided by Coy and Craig, you see that there needs to be a necessity as well as that the reliability of the testimony is otherwise assured. Do you think it would have been odd if only the testifying witness and the accused were not masked? That's much closer to your jail uniform hypothetical than what happened here. I think the prejudice stems from the fact that it's the same mask as worn by the robber. I think though if you compare it to the testimony from the count four witnesses where the mask was different for the robber in that count for which Mr. Jenkins was acquitted and you compare that to the testimony provided by the count three witnesses, you can see the prejudicial effect of him wearing the same mask as the robber wore during the required everyone to be masks except for the witnesses when they testify. But as I understand the general order, it didn't dictate the type of mask to be worn. Do you understand the general order differently? In other words, is it your position that Mr. Jenkins was forced to wear a blue surgical mask as opposed to some other type of mask at counsel table? I don't think that he was forced to wear the blue mask in particular. However, I think that might lend itself to the fact that he was in custody at the time of the trial. I think if he were to have worn a red bandana, for example, that that might actually be less prejudicial because it would have been a significant deviation for the count three eyewitnesses to kind of give them a moment to pause and say is this actually the robber or not? I can only see the upper half of his face and in the I want to assure you that I am certain that you would be here if he had been forced to wear a red bandana. You would be here with that case, but go on. Well, I think it's it's a an apt hypothetical because it it demonstrates the prejudicial effect of the mask at the moment that he's being identified by the witnesses as the perpetrator of this crime. I mean, when comparing the testimony from the count for witnesses, they say, I think it's the guy, but I'm not really sure he's wearing a mask. And you have the three witness testimony that's saying his mask is more up today than it is than it was at the time of the robbery. And at the time of the robbery for count three, for which Mr Jenkins was convicted, it slipped. The robber's mask slipped down below his testified about having greater visibility of the robber's face than of Mr. Jenkins, who was seated 30 to 40 feet across the courtroom from him, whereas the robbery occurred within a very tight space within this very small bank branch over the course of just a few minutes. I think that's where we get back to the confrontation question because the confrontation clauses about the opportunity to cross examine. So all of those issues, where do you see that counsel did not have the opportunity to question the witnesses about those aspects of their identification and make those arguments to the jury at closing so that the jury, which itself saw the, um, the identification could judge the reliability of the identification for itself? Well, I think um, it goes to where do you see there was no opportunity to confront on those issues? I think the issue for confrontation is it's not so much about the cross examination that occurred. It's more about the jury being able to see that moment where the witness is identifying the defendant in front of them as the person who perpetrated the robbery. I mean, Coy teaches us that there's the opportunity for the witness to see the reaction of the defendant and for the jury to witness that interaction between the two parties. And so I think the fact that there is a shield in this case, like there was in Coy between the testifying eyewitness and the defendant is prejudicial to the outcome of this case. And I think it's a structural error because it invaded the fundamental that Graber and Beese had a full opportunity to view Mr. Jenkins face when in reality, that's not the case. Um, you know, it seems to me that if Jenkins had made a timely confrontation clause objection during the trial, which of course never occurred, perhaps it would have been possible that the by allowing him to lower his mask for some period of time. And if the court had refused to make such an accommodation, we might have a different issue on appeal. But there was no such objection. We are reviewing here solely for plain error. Yes, I, I think though, if the court were to vacate his conviction and remand for a new trial, he would not wear a mask. And I think that that's kind of partly the error that goes into this is that there wasn't an analysis of whether or not his mask needed to be worn at the time that he was being identified. Um, and I think the reliability of the testimony that was otherwise presented is still questionable. Without the eyewitness identification, there's really very little evidence on which to convict Mr Jenkins for count three. The really only two other elements that issue are the shoes and then the bait bill. Um, and so I think because the eyewitness identification was, it was unduly suggestive by him wearing the same mask as the robber. Um, he was also seated at council table. And so I think those combined effects, um, make the identification unreliable and duly suggestive. And it essentially transforms the eyewitness identification of Mr Jenkins into a show up. And then the expectation that the jury would be able to parse out this distinction between following the instructions that they're presented with and finding this perhaps unconscious bias from these count three witnesses being presented with the face that they recognize, um, because of the mask goes to show that it's a structural error. It invaded the overall framework of the trial because it is fundamentally necessary for to sustain the conviction. Ms Butler, can I ask you? It's easy for me to imagine a defense lawyer. We have no record on this, but a defense lawyer saying if we're doing eyewitness IDs here in court, I'd rather have my client mask than unmask because it's going to be more than, uh, count four, the count four witnesses. Um, this, why shouldn't we just treat this as a subject of trial tactics? Well, I think the government does have a responsibility to prove their case and that includes the face-to-face confrontation and allowing this interaction to occur within the purview of the jury. Um, and . . . And that happened. To a certain degree. I mean, I think there's still a COI issue and an issue related to Craig. Um, and it goes to the ultimate reliability of the eyewitness identification, which is really the main distinction between count three and count four, um, which is arguably the reason why count three came back as a conviction and count four came back as an acquittal. I think Mills v. State is a good example, um, even if it is persuasive authority as to what should have happened, that Mr. Jenkins should have been temporarily unmasked for the purposes of this eyewitness identification. Suppose he had objected to that. Suppose, suppose, uh, Jenkins had, at trial, had objected to being the only person in the courtroom other than the witness who was not wearing a mask. I think that . . . I think that would have been less prejudicial, um . . . Why do you think that? Because you . . . it's unclear as to whether or not Graber and Veazey would have still identified Mr. Jenkins as the robber. In their testimony, they talk about seeing more of the robber's face at the time of the robbery than they do of Mr. Jenkins' face at trial. Um, and I would ask to maintain the rest of my time for rebuttal. Of course. May it please the Court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. We're here on plain error and the issue is whether the district court should have on its own stepped in during the trial and told Mr. Jenkins that he had to take off his mask because otherwise it violates the Confrontation Clause and the Due Process Clause. There's no precedent that requires that. There's no reason to believe the Confrontation Clause or the Due Process Clause requires that, and so this Court should affirm. Um, I'd like to address a few of the points that were raised in argument. And we're going to two different lines of thinking. There's the Due Process Clause and the question about whether it's unduly suggestive, the identification procedure here. Well, there was no out-of-court identification, so we're really in the question of Perry v. New Hampshire. And the defendant here was given adequate safeguards to expose any potential flaws in the identification to the jury. He was allowed to cross-examine the witnesses. He was entitled to the presumption of innocence. He had defense counsel. And so Perry's satisfied. There's nothing unduly suggestive. Um, to the extent that there's any argument that a Facebook post may be rendered the identification unduly suggestive, on page 204 of the transcript, the witness, Ms. Beezy, testifies that she saw the Facebook article come up on her news feed. So we still don't have governmental action. There was nothing done pretrial by the government to create any identification. And so the unduly suggestive argument just falls on the law. Mr. Whalen, would you be kind enough to address Mr. Changston's point that because he was wearing a mask when Ms. Graber and Mr. Beezy identified him in court, they could not see his facial expressions and thus could not see how he reacted to their identification testimony? Is seeing how a defendant reacts to the adverse testimony of a witness not an interest that is protected by the Confrontation Clause? That is correct, Your Honor. The ability to see the defendant's mouth is not protected by the Confrontation Clause. They were able to see his reaction. They could see his eyes. They could see his eyebrows. There's one of the district court opinions we cite talk about, you know, you might have a defendant who has goose bumps on his arm, but that wouldn't require you to take off his sleeves in the middle of trial so the jury could evaluate that. The Confrontation Clause, as Coy sets out, says that the jury should be able to see the witness give testimony against the defendant in the defendant's presence. And this isn't a case like Coy. In Coy, you have a screen that's set up that completely blocks the witness's ability to see the defendant. There's no ability to see them whatsoever. Here, the jury could see  them. There certainly is no case law in this court or any other court that requires a defendant to be unmasked at counsel table. And as I understand the argument on appeal today, it's two different things. The first is that it actually would have been less suggestive if he had been the only unmasked person. And I agree with Your Honors, we'd be facing the exact counter argument here, that that violated his Confrontation Clause rights. The defendant in Mills actually went a step further, and the court, as the witnesses identified, and the court said, you know, Mr. Defendant, could you temporarily lower your mask? So he's the only one literally moving at trial at that point during the identification. That is, in my opinion at least, more suggestive than what happened here where everyone else in the courtroom is wearing a mask. None of this plainly violates the Confrontation Clause or the Due Process Clause. Judge Jackson, cue me to your question. There's no evidence in the record that anyone compelled him to wear a specific mask. The general order said that you have to be masked except with the permission of the presiding judge. Here the presiding judge said that the witnesses could unmask. There's no evidence whatsoever that anyone made him wear that particular mask, nor did he ever ask to take off his mask. You know, had he asked that, maybe Judge DiGiulio could have figured out some remedy here, but he never did. In terms of the harmlessness questions, Your Honors, the Coy air is not structural. On page 25 and 26 of our briefs, we address the point that Confrontation Clause analysis is subject to harmless error. The Supreme Court held it subject to harmless error itself in Coy. It ends its opinion with a harmless error analysis. Your Honors, in terms of just one other point I'd like to make, unless the Court has any questions, is the difference between the counts. Mr. Jenkins has argued that really this count of conviction turned on the identification. We don't agree with that. There was the video of the robbery the jurors were able to look at and compare him to the individual on the screen. They saw Facebook photos of him unmasked. They saw him testify unmasked, so to the extent that maybe that's the issue, they were exposed to that. What was different evidentiary between this count and the other counts is that the jurors heard about the fact that his girlfriend had a bait bill from the robbery on her when he's arrested sitting in the same car as her. He had the shoes that the robber was wearing in that robbery. We didn't have that evidence for the other counts. They also saw a Facebook photo of him wearing the same jacket as the robber. There was a lot more physical evidence tying him to this robbery. To that point about there being plenty of physical evidence and more than the other counts, let's talk about the obstruction enhancement. Since there was plenty other evidence, how is the shoes testimony material? It has to be material to merit perjury enhancement. Judge DiGiulio found it was material because had the jury believed him and his mother about that testimony, they were capable of believing that he wasn't present at the robbery. The evidence was the robbery takes place in late December. He and his mother say he got the shoes six days after the robbery. That's the type of fact testimony that would be capable of influencing a jury. How would they be capable of seeing things that way? Your Honor, I think they could weigh it and say, well, we think the shoes might be part of the linchpin. If we have a question about the shoes, that might undercut a reasonable doubt determination. You could dissect any potential piece of evidence and say if this had gone the other way, if the jury believed this, maybe that changes their entire thinking. Judge DiGiulio found this is a material fact. That's a question of clear error for this case. Is there a situation where any time defendant's evidence contradicts the jury's findings, then obstruction automatically applies? No, Your Honor. What we need is the district court to make a determination materiality. And Judge DiGiulio sat through the trial and heard the testimony and made a determination materiality here. I don't think if he had said, you know, I was wearing a blue hat and it was a, you know, slightly purple hat that that's going to be a materiality question necessarily for the district court to find. I do think the sense that there's a challenge of materiality, though, that is waived because defendant hasn't questioned the materiality in this briefing. The defendant's issue is that somehow allowing the or finding obstruction on these facts chilled his right to, I'm sorry, against self-incrimination. That's a pure legal question. I don't think he's ever questioned the materiality finding by Judge DiGiulio. We also, of course, have the fact that he was untruthful about not being asked about the birthday. I think that probably added to Judge DiGiulio's consideration. I think that's correct, Your Honor. A couple of comments or questions, Mr. Whalen. One, I have to say I've rarely seen a weaker harmlessness argument than this. We've got three charged robberies and we get all three results. One's acquitted, one's hung, and one's convicted, right? So all of them depending on slightly varying packages of evidence, different levels of confidence in eyewitness IDs, but not exactly a slam dunk for the government. One of the questions, I guess, I have is I'm troubled by the Walmart receipt in the bag where ordinarily we'd expect the government to be all over that. Turns out it's not the guy. It's not Mr. Jenkins, right? There was a Walmart receipt in the bag that was found during the robbery that ultimately different, we introduced or it was introduced at trial surveillance video, different individuals at the Walmart store. I don't think we can conclusively say they were the individuals who were the purchasers on the Walmart receipt. That was certainly the argument the defense made at trial. And the government's response? The government's response was that it was inconsequential because the defendant was the one who was in the robbery. I understand Your Honor's point on the harmlessness. I will say though the physical evidence is pretty damning for the defendant when he's sitting there with his girlfriend and she has one of the bait mark bills from the robbery itself. That's not great evidence that we always get in. I was going to say it's not great evidence we always get to fall in our lap, but that would be shortchanging the police officer's work in this case. That is pretty compelling evidence that he's sitting there next door, that he's wearing the same shoes as the robber in the video. Except there's also evidence in the case that there are groups of people associating with each other here. He put in evidence that he borrowed someone's hat or something or another. The Walmart video shows a different group of people, not including Jenkins. So then the fact that his girlfriend has a bait bill and he says she got it from someone who I associate with becomes less damning because it's clear there's a group of people involved here. I don't think there's any evidence that the people from the Walmart video were associating with his girlfriend. I can't say that with 100 percent certainty, but it's my recollection that we're kind of talking about two different circles the defendant might be traveling in. My point is that he is traveling, as you say, with other people and there's evidence not just from him, that there are friends and associates around who are in the mix at various points over this winter holiday during the period of these robberies. So I'm just trying to be as clear as I can with you as to whether or not    wanted to make sure that you would be able to see. Agreed. Your honor. And that evidence was flushed out in front of the jury and the jury was able to appropriately consider it. Unless there are any questions about any other questions about anything, we would ask that you affirm the conviction and sentence. Thank you very much. Mr. Well, thank you. Hello, Miss Butler. I'd like to start by making a quick clarification. The masks worn by the robber in count three and count four are different. The count three robber wore a blue surgical mask. The count four robber wore a black mask. Additionally, I think the Walmart receipt and surveillance footage is significant evidence to be considered in count three, particularly in light of the eyewitness identification. Agent Weber testified that the individuals in the Walmart surveillance video were known associates of Mr. Jenkins. And Mr. Jenkins testified that Camilla Walton, the girlfriend, what ex-girlfriend was associated with other individuals that were running in their circles. So I think it's. Important point to consider the fact that this robbery did not take place in a vacuum. And additionally, I think that the jury needs to see the confrontation. I think like Coy that to. If Mr. Jenkins were the only unmasked individual in the room, I think that there still would be a confrontation error. And to that point, I think that regardless of whether or not there was a timely objection, this is still a structural error. It's not just a plain error under the Sixth Amendment, but it is so intrinsically harmful that it requires an automatic reversal. It doesn't have to do with the ultimate outcome, but it has to do more within the framework that the trial proceeds. Additionally, I think Beasley's testimony is further unreliable by the fact that she did see Mr. Jenkins associated with the count for robbery. Her testimony on cross-examination confirms that even though she may not be able to identify the photo at the time of trial, that she did see Mr. Jenkins was affiliated with the count for robbery upon his arrest. So regardless of whether or not. So setting aside her identification of Mr. Jenkins, as the robber, I think there is unreliability within her testimony based on the fact that she had previously seen Mr. Jenkins affiliated with the robbery for which he was being tried. Ms. Butler, can I ask you about one of the sentencing issues, specifically the criminal history calculations based on the juvenile convictions? The government responded in its brief both on the juvenile conviction and the criminal history question. And I'm not sure if you're aware of that, but the judge made clear that his ultimate decision did not depend on the resolution of that question. I didn't see a response to that point in your brief. Well, first, I think that there's no direct evidence that Shayla Stroud was presented at trial for the purposes of perjuring herself. I'm not talking about obstruction. I'm talking about the juvenile criminal history question. Yeah. And I, the 426 and the 357 cases were adjudicated together. They were not treated as separate and distinct. There was one sentence that was. I understand your point on the merits. I'm asking about the government's point that the district judge said this does not matter to me. Well, I think that under the 3553 factors, there's more to be taken into consideration there. I mean, if you look at Mr. Jenkins PSR, there's a significant amount of personal history that goes into consideration of the juvenile adjudications. Thank you. Thank you. All right. Would you just stay there for one moment so that I can properly thank you. You were appointed and we all want to thank you for taking the appointment and not only that, Ms. Butler, for taking it so seriously and for doing such a good job for your client. It is so appreciated and we want you to know that. And at the same time, we want to thank Mr. Whalen, of course, for the fine job he always does on behalf of his client who, of course, he only has one client who happens to be the United States. So thanks to both of you. And the case will be taken under advisement and we're going to take it.